Kevin G. SASINOSKI, Esquire Public Defender of Allegheny County

v.

Glenn CANNON, Allegheny County Manager, Appellant.

Kevin G. SASINOSKI, Esquire Public Defender of Allegheny County

v.

Glenn CANNON, Allegheny County Manager, Appellant.

Commonwealth Court of Pennsylvania.

Argued June 4, 1997.

Decided July 3, 1997.

268

Kerry Fraas, Pittsburgh, for appellant.

John Elash, Pittsburgh, for appellee.

Before COLINS, President Judge, and DOYLE, SMITH, FRIEDMAN and FLAHERTY, JJ.

SMITH, Judge.

Glenn Cannon, the County Manager of Allegheny County, appeals from two orders of the Court of Common Pleas of Allegheny County. The first order was a preliminary injunction issued on January 24, 1997 that restored Kevin G. Sasinoski to the Office of Public Defender with full power to discharge his responsibilities; restored two other employees of the office to their positions; enjoined Cannon or any other officer or employee of the County from interfering with the Public Defender in the discharge of his duties; appointed the Sheriff of Allegheny County to conduct an investigation into allegations of political and criminal activities within the Public Defender's Office; and scheduled a hearing on the matter. The second order on February 4, 1997 made permanent the previous preliminary injunction order and ruled that the Public Defender is a constitutional officer of the County who may be removed only by impeachment, although the other two employees could be dismissed for good cause, but not for discriminatory or political reasons.

Cannon raises both procedural and substantive challenges to the trial court's rulings. Procedurally, Cannon questions whether the trial court erred in granting injunctive relief based solely upon the Public Defender's petition for ex parte injunction and whether the trial court erred in granting the ex parte injunction in a hearing held without notice to opposing parties and of which no record was made. Substantively, Cannon questions whether the trial court erred in holding that the Public Defender must be removed from office through impeachment rather than by the power that appointed him.

I.

On January 23, 1997, Glenn Cannon, without prior notice, placed the Public Defender on paid administrative leave, along with the First Assistant Public Defender, the Office Manager and the Deputy Chief Investigator. The next morning, January 24, 1997, the Public Defender filed a petition in the Common Pleas Court for an ex parte injunction, which was assigned a miscellaneous docket number. He alleged imminent and irreparable harm and deprivation of constitutional rights of indigent criminal defendants represented by the Public Defender's Office, including defendants for whom sentencing hearings were scheduled that same day, if Cannon's actions were not overturned and further interference enjoined. After an emergency ex parte proceeding, the trial court issued the order described above, scheduling a hearing on the matter for January 29, 1997. Cannon filed a notice of appeal

from that order on January 27, 1997, which was docketed at No. 287 C.D.1997.

On January 28, 1997, the Public Defender filed a Complaint in Equity in the Common Pleas Court, stating essentially identical allegations and claims as those in the petition for ex parte injunction. The trial court held the hearing as scheduled on January 29 and continued it for further testimony on February 4, 1997, including testimony from some witnesses called by the court. Although the validity of Cannon's action was the ultimate question posed by the proceeding, Cannon did not testify. At the close of the hearing, following argument, the trial court made the previous order permanent. Cannon filed a motion for post-trial relief as to the second order on February 14, 1997; he filed a notice of appeal on March 7, 1997, docketed with this Court at No. 640 C.D.1997, along with the statement of matters complained of on appeal as directed by the trial court, which issued an opinion in support of its order on March 27, 1997. By order of April 10, 1997, this Court granted Cannon's applications for consolidation and expedited consideration of the two appeals.

## II.

■ Cannon's first procedural argument is that the trial court erred and abused its discretion in concluding that it had jurisdiction to grant the ex parte injunction based solely on a petition. He relies upon *Hartmann v. Peterson*, 438 Pa. 291, 265 A.2d 127 (1970), where a party attempted to commence an action in equity to enjoin an elected county official from taking her office by filing a petition for a rule to show cause. The trial court dismissed the defendant's preliminary objections and denied her motion to dismiss. The Supreme Court reversed, holding that the action had not been commenced in accordance with Pa. R.C.P. No. 1007, which at that time required commencement of an action by filing with the prothonotary a praecipe for writ of summons, a complaint or an agreement for an amicable action.

The Supreme Court stated that the petitioner's apparent reliance upon Pa. R.C.P. No. 1531(a) was misplaced. That Rule per-

mits a court to issue a preliminary or special injunction without notice or a hearing if it appears to the court "on the basis of the averments of the pleadings or petition" that immediate and irreparable injury will be sustained before notice can be given or a hearing held. The Supreme Court adopted an interpretation of the reference to a "petition" as meaning a petition for preliminary or special injunction filed after or supplemental to the complaint. With no complaint, summons or amicable agreement before the trial court, it lacked the power to make any order at all. Cannon stresses that the trial court's reliance here upon the reference to a "petition" in Pa. R.C.P. No. 1531(a) as authority for its procedure is contrary to *Hartmann*; he argues that the court lacked jurisdiction to enter the preliminary or permanent injunction.

■ Next Cannon asserts that the trial court erred in granting the ex parte injunction in a proceeding as to which Cannon received no notice and of which no record was made. He relies principally upon *Commonwealth v. Guild Theatre, Inc.*, 432 Pa. 378, 248 A.2d 45 (1968), where a district attorney requested and received an injunction against the screening of an allegedly obscene film in a proceeding conducted without notice to the theater owner and without the making of a record. Referring to Pa. R.C.P. No. 1531(a), the Supreme Court noted that no effort to provide notice was made, and it concluded that, in any event, further screening of the film until a proper adversarial hearing could be held did not constitute the irreparable injury required under the Rule. Cannon asserts that no effort was made to provide notice to him, despite the close proximity of the courtroom and the offices involved. He contends further that the trial court's opinion does not address the question of lack of recording, and he asserts that the proceeding was similar to the Star Chamber proceedings alluded to in *Guild Theatre, Inc.*

In response, the Public Defender first asserts that Cannon's challenge to the petition procedure is waived because of his failure to make a timely objection before the trial court's consideration of the injunctions on

their merits. The Public Defender also refers to the admonishment of Pa. R.C.P. No. 126, relating to liberal construction and application of the Rules of Civil Procedure, that a court at every stage of an action or proceeding may disregard any error or defect of procedure that does not affect substantial rights of the parties. Despite *Hartmann*, the Public Defender argues that Pa. R.C.P. No. 1531(a) contemplates the commencement of an action by means of a petition. He refers also to Rule 1531*(g) of the Rules of the Civil and Family Divisions of the Court of Common Pleas of Allegheny County, which provides: "A preliminary injunction shall not be granted until after an action has been commenced in accordance with Pa. R.C.P. 1007 . . . except in cases of emergency."

The Public Defender describes the exigency of the situation by stating that he received the directive from Cannon after the close of the court on January 23, 1997. Among other things, it prevented him from entering his office or contacting any of his employees. He, however, had numerous cases scheduled for the day and week following receipt of the directive, and he was professionally obligated to provide representation for his clients. The terms of the directive prevented him even from attempting to arrange for substitute counsel. The Public Defender distinguishes *Hartmann* by noting that no emergency was present in that case and no complaint was filed or served on the opposing party before the hearing. Here, by contrast, a complaint in equity was filed and served before the January 29 hearing. In the Public Defender's view, the effect of the trial court's procedure was to grant the preliminary injunction on the basis of the petition and then to consolidate that proceeding with the complaint in equity and to issue a permanent injunction on the complaint.

Finally, the Public Defender notes that in *Den–Tal–Ez, Inc. v. Siemens Capital Corp.,* 389 Pa.Superior Ct. 219, 566 A.2d 1214

(1989), and other cases, the Superior Court reaffirmed the principle that a preliminary injunction is superseded by a decision on the merits and terminates upon the issuance of the permanent injunction. The Court agrees with this principle. The validity of the February 4, 1997 order is the only question before this Court, in the sense that it is the only matter as to which the Court can afford relief, and any other questions as to the preliminary injunction procedure are now moot.

In addition, the Court agrees that the trial court's permanent injunction was issued not solely upon the basis of the petition filed January 24 but also upon the basis of the complaint filed January 28. As the Public Defender notes, where separate actions involve common questions of law or fact, Pa. R.C.P. No. 213(a) authorizes a trial court to order consolidation or to make such orders as may avoid unnecessary costs or delay. *See also Trinity Lutheran Evangelical Church v. May,* 112 Pa.Cmwlth. 557, 537 A.2d 38 (1988), where this Court rejected a motion to quash an appeal from a permanent injunction order for failure to file post-trial motions, when, as in the present case, the order was not labeled a decree nisi and gave no indication that it was other than a final order.[1]

### III.

■ As both parties recognize, the heart of this case is the trial court's ruling on the substantive question of the proper method of removal of a public defender. The trial court noted that a public defender is among those persons specifically enumerated and defined as county officers in Article VI, Section 7 of the Pennsylvania Constitution. It then referred to Section 450(a) of the Second Class County Code, Act of July 28, 1953, P.L. 723, *as amended,* 16 P.S. § 3450(a), which provides:

The county commissioners, the sheriffs, coroners, prothonotaries, registers of wills,

---

1. The standard of review of an order granting injunctive relief is that the chancellor's findings of fact will not be disturbed absent an abuse of discretion, capricious disregard of evidence or a lack of evidentiary support in the record. Further, the grant of relief will be upheld unless the rules of law relied upon are palpably wrong or clearly inapplicable. *Carroll v. Ringgold Educ. Ass'n,* 545 Pa. 192, 680 A.2d 1137 (1996).

recorders of deeds, treasurers, controllers, clerks of the courts, district attorneys, and any other officers of the county, whether elected or duly appointed to fill a vacancy, shall be removable from office only by impeachment, or by the Governor, for reasonable cause, after due notice and a full hearing, on the advice of two-thirds of the Senate, or upon conviction of misbehavior in office or of any infamous crime....

Cannon contends that the trial court erred in applying Section 450(a) of the Second Class County Code to the Public Defender, because of its reference to "officers ... duly appointed to fill a vacancy...." He notes that the Constitution distinguishes between elected and appointed county officers for purposes of removal in Article VI, Section 7:

> *Appointed civil officers, other than judges of the courts of record, may be removed at the pleasure of the power by which they shall have been appointed.* All civil officers elected by the people, except the Governor, the Lieutenant Governor, members of the General Assembly and judges of the courts of record, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate. (Emphasis added.)

Cannon points out that Section 4 of the Public Defender Act, Act of December 2, 1968, P.L. 1144, *as amended,* 16 P.S. § 9960.4, provides: "The public defender shall be appointed by the Board of County Commissioners." [2]

Cannon argues that Section 450(a) of the Second Class County Code applies only to elected civil officers or to those appointed to fill out an elective term. Section 450(b), 16 P.S. § 3450(b), applies to appointed county officers: "Appointees to county offices or positions other than to elected offices shall be subject to removal at the pleasure of the appointing power, except as otherwise expressly provided by law, and they shall also be removed on conviction of misbehavior in office or of any other infamous crime." The Court considers this argument to be irrefuta-

ble. Accordingly, the trial court erred in holding that a public defender must be impeached rather than removed at the pleasure of the appointing power.

■ However, this is not the end of the inquiry. The question remains whether the action taken by Cannon constituted removal by "the appointing power." As was noted above, Cannon did not testify at the hearing on this matter. Neither did any County Commissioner. There has never been any allegation or any basis for an inference that Cannon acted at the direction of a majority of the Board of Commissioners or with their express approval. The authority Cannon purported to exercise was that of his position of County Manager.

The Public Defender raises several arguments against Cannon's possessing any authority to remove him. The first concerns the nature of the function of the Public Defender's office. In *Reese v. Danforth,* 486 Pa. 479, 406 A.2d 735 (1979), the Supreme Court considered the question of whether a public defender was entitled to common law official immunity against claims of legal malpractice. The lead opinion of Justice Nix holding that the public defender was not immune was based in large part upon the unique function and necessary independence of the office:

> The relationship between the county and the public defender is similar to that between an independent contractor and the party contracting for his services. The county has no control over the manner of representation given indigents by the defender. The nature of the work involves the attorney-client relationship and is of a type that precludes outside interference or direction by the county.

*Reese,* 486 Pa. at 485, 406 A.2d at 738. The Public Defender argues that interference such as the suspensions that were attempted here undermines the constitutional and statutory promise of representation for indigents.

In a broader argument, the Public Defender challenges the legal existence of the office

---

**2.** *See also* Article IX, Section 4 of the Pennsylvania Constitution: "County officers, except for public defenders who shall be appointed as shall be provided by law, shall be elected at the municipal elections...."

of a "County Manager" and hence the authority of Cannon to take any official action whatsoever. The Public Defender notes that the Second Class County Code, 16 P.S. §§ 3301—6302, not only enumerates the elective county government offices in Section 401, 16 P.S. § 3401(a), but also specifies in great detail appointive officers and assistants. Nowhere in this or any other statute is provision made for an office of "County Manager." In *Walker's Appeal*, 294 Pa. 385, 144 A. 288 (1928), the applicable statute enumerated the positions that could be filled in a *controller's office, including that of* "clerk," and the controller sought to hire an investigator. The Supreme Court held that only the legislature, not the salary board or the court of common pleas, might authorize such a new position. This law has not changed since 1928.

The Public Defender contends that without authorization by statute, the office of County Manager and the actions of the person holding it are void ab initio. Further, the Public Defender asserts that the demand made by Cannon that no department head should contact the Board of Commissioners directly, but rather should go through his office, violates the statutorily created structure by which employees report to department heads and department heads report to the Board of Commissioners. The Public Defender also notes that Article VI, Section 7 authorizes removal of appointed officers only by "the power by which they shall have been appointed." Here, he argues, that power is the Board of County Commissioners under Section 4 of the Public Defender Act, not an "appointed functionary."

The Court agrees with the Public Defender's argument based upon *Reese.* The Supreme Court noted that the public defender's function was like that of a privately employed attorney, because his or her duty is to represent the client's interests zealously against the county's interests. This Court emphatically notes that such a function necessarily requires the maximum possible independence. The notion that a public defender's

office should be subject to the type of disruption by a county administrator that took place here is antithetical to the fundamental conception of the public defender's role, and, further, it undermines the constitutional and statutory promise of legal representation to indigent criminal defendants.

Apart from the question of whether the office of County Manager is void, the Public Defender has argued throughout that Cannon lacks any authority, statutory or otherwise, over the Office of the Public Defender.[3] The Court agrees. Cannon has advanced no specific source for the authority that he exercised. In the absence of any authority, actions that disrupt the Office of the Public Defender, that threaten the rights of the clients served and that pose an interference in the functioning of the court system can not be tolerated. Finally, the Court also agrees that "the power by which [the Public Defender] shall have been appointed" referred to in Article VI, Section 7 means the Board of Commissioners. They alone had the authority to do what Cannon attempted to do. Finding no basis to overturn the trial court's permanent injunction order, the Court hereby affirms the trial court's order restoring the Public Defender to his office and enjoining Cannon from further interference with the Public Defender in the discharge of his duties.

McGINLEY, J., did not participate in the decision in this case.

### ORDER

AND NOW, this 3rd day of July, 1997, the order of the Court of Common Pleas of Allegheny County is affirmed in regard to the appeal at No. 640 C.D.1997. The appeal at No. 287 C.D.1997 is dismissed as moot.

---

3. The Public Defender's contention that the office of County Manager is void ab initio for lack of statutory authorization is not without force. Nevertheless, this contention was not raised be-

fore the trial court and ruled upon at that stage, and it may not be raised for the first time here. Pa. R.A.P. 302(a).