751 A.2d 647

**COMMONWEALTH ex rel Mark C. BALDWIN, District Attorney, County of Berks, Appellee,**

v.

**Eden RICHARD, Jr., Appellant.**

Supreme Court of Pennsylvania.

Submitted Feb. 5, 1998.

Decided May 18, 2000.

492

Michael J. Cammarano, Reading, for Cammarano & Tract.

Mark Baldwin, Dist. Atty., Richard P. Reynolds, Ellen R. West, Asst. Dist. Attys., for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

ZAPPALA, Justice.

This direct appeal [1] raises the issue of whether a conviction for a crime that is neither a felony nor a *crimen falsi* offense constitutes an infamous crime for purposes of Article II, Section 7 of the Pennsylvania Constitution, which prohibits those who have been convicted of infamous crimes from holding public office. The common pleas court held that such offenses constitute infamous crimes. For the reasons that follow, we reverse.

[1]. We have jurisdiction over this appeal pursuant to 42 Pa.C.S. § 722(2), which provides that our Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in cases involving the right to hold public office.

The record establishes that in 1979, Eden Richard, Jr., Appellant, held his former girlfriend at gunpoint in an automobile for three hours at a parking lot in King of Prussia, Montgomery County. On August 14, 1979, he pled guilty in the Montgomery County Court of Common Pleas to unlawful restraint,[2] terroristic threats,[3] firearms not to be carried without a license,[4] possession of an instrument of crime[5] and recklessly endangering another person.[6] The court accepted Appellant's guilty plea and sentenced him to five years probation, a $500 fine and mandatory psychiatric treatment.

Eight years later, in November 1987, Appellant was elected to a four-year term as a borough councilman in the Borough of Birdsboro, Berks County. He was sworn into that position on January 11, 1988, and completed his term on December 31, 1991. Appellant was re-elected as a borough councilman in November 1993, and was sworn into office on December 29, 1993.[7]

2. 18 Pa.C.S. § 2902.

3. 18 Pa.C.S. § 2706.

4. 18 Pa.C.S. § 6106.

5. 18 Pa.C.S. § 907.

6. 18 Pa.C.S. § 2705. At the time Appellant entered his guilty pleas, unlawful restraint, terroristic threats. firearms not to be carried without a license and possession of an instrument of a crime were misdemeanors of the first degree and recklessly endangering another person was a misdemeanor of the second degree. A crime is a misdemeanor of the first degree if the court may impose a sentence of not more than five years imprisonment. 18 Pa.C.S. § 106(b)(6). A crime is a misdemeanor of the second degree if a court may impose a sentence of not more than two years imprisonment. 18 Pa.C.S. § 106(b)(7).

7. Although Appellant is no longer in office, the issues raised in this appeal are not moot. This Court has decided substantial questions, otherwise moot, which are capable of repetition unless settled. *Colonial Gardens Nursing Home, Inc. v. Bachman*, 473 Pa. 56, 373 A.2d 748, 750 (1977). The issue of what constitutes an infamous crime for purposes of eligibility to hold public office is a substantial question subject to repetition in the Commonwealth. Additionally, this Court has previously decided *quo warranto* actions when the defendant was not currently holding office. *See In re Petition of Hughes*, 532 A.2d 298 (Pa.1987) (defendant was not holding public office at the time that this Court held that he was ineligible to do so as a result of his convictions for infamous crimes).

On January 12, 1994, the District Attorney of Berks County, Appellee, commenced this *quo warranto* action in the Court of Common Pleas of Berks County.[8] The action sought Appellant's removal from his borough council position on the grounds that Appellant was ineligible to hold office because his 1979 convictions constituted "infamous crimes" under Article II, Section 7 of the Pennsylvania Constitution.[9]

The parties filed cross-motions for summary judgment and the trial court heard oral argument. The court ruled that because Appellant's convictions disqualified him from serving as a juror, they constituted infamous crimes. By order dated December 23, 1996, the trial court granted the Commonwealth's motion for summary judgment and ordered: (1) that Appellant be removed from his present borough council position; (2) that the borough council seat be declared vacant effective immediately; and (3) that Appellant be precluded from holding any office of public trust or profit in the Commonwealth. This appeal followed.

Before we address the significant issue of whether Appellant's convictions constitute "infamous crimes," we must first dispose of Appellant's other arguments in support of reversing the lower court's decision. Appellant first claims that the trial court lacked jurisdiction over this action because his removal from office constituted an additional sanction that altered the terms of his Montgomery County plea agreement and sentence. According to Appellant, because the acts underlying the criminal conviction all occurred in Montgomery County, this *quo warranto* action should have been brought in

8. A *quo warranto* action is the proper method to challenge title or right to public office. *Andrezjwski v. Borough of Millvale*, 543 Pa. 539, 673 A.2d 879, 881 (1996). Generally, a *quo warranto* action may be instituted only by the Attorney General or by the local district attorney. *In re One Hundred or More Qualified Electors of Clairton County*, 546 Pa. 126, 683 A.2d 283, 286 (1996).

9. This section provides:

No person hereafter convicted of embezzlement of public moneys, bribery, perjury or other infamous crime, shall be eligible to the General Assembly, or capable of holding any office of trust or profit in this Commonwealth.

Pa. Const. art. II, § 7.

the Court of Common Pleas of Montgomery County. We disagree.

By alluding to "punishment," Appellant mistakenly likens a *quo warranto* action seeking to remove a person from office pursuant to Article II, Section 7 of the Pennsylvania Constitution to a criminal proceeding. The purpose of removing one from public office under these circumstances is not to punish the officer. Instead, it is to assure the requisite good character of those individuals whom our citizens look to for governance. In *In re Petition of Hughes,* 516 Pa. 90, 532 A.2d 298 (Pa.1987), this Court quoted approvingly from a decision by the Supreme Court of Delaware explaining the purpose of a provision of the Delaware Constitution which was similar to Article II, Section 7:

> To fully understand the operation of Art. II, § 21 [of the Delaware Constitution], it is necessary to examine its purpose. In our view, it is essentially a character provision, mandating that all candidates for State office possess high moral qualities. **It is not a provision designed to punish an offender.** While conviction of an infamous crime does not imply that an offender is incapable of functioning as a respected and productive member of society, it is irreversible evidence that the offender does not possess the requisite character for public office....

*Petition of Hughes,* 532 A.2d at 302 (emphasis added). Thus, Appellant's removal from office did not constitute an additional sanction that in any way affected the terms of his Montgomery County criminal plea agreement and sentence.

Moreover, Rule 1112(b) of the Pennsylvania Rules of Civil Procedure provides that:

> An action brought in a court of common pleas in the name of the Commonwealth on the relation of the District Attorney may be brought only in the county where the political subdivision is located when the action is against an officer thereof.

Pa.R.Civ.P. 1112(b).

Here, because Appellant was a councilman in the Borough of Birdsboro, a political subdivision in Berks County,

▐▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Rule 1112(b) required the Berks County District Attorney to bring the present action in the Court of Common Pleas of Berks County. Accordingly, Appellant's jurisdictional claim lacks merit.[10]

▐▮▮▮▮ Appellant next claims that the trial court erred in declining to grant his motion for summary judgment on the ground that the *quo warranto* action is barred by the doctrine of laches because there was an unreasonable delay in the Commonwealth's filing of the action. The doctrine of laches bars relief when the plaintiff's dereliction indicates a lack of due diligence in failing to institute an action and such failure results in prejudice to another. *Leedom v. Thomas,* 473 Pa. 193, 373 A.2d 1329, 1332 (1977). The party asserting laches as a defense must present evidence demonstrating prejudice from the lapse of time. *Commonwealth v. Gilligan,* 195 Pa. 504, 46 A. 124 (1900). Such evidence may include establishing that a witness has died or become unavailable, that substantiating records were lost or destroyed, or that the defendant has changed his position in anticipation that the opposing party has waived his claims. *Kay v. Kay,* 460 Pa. 680, 334 A.2d 585, 587 (1975). Because Appellant fails to present any evidence demonstrating that the alleged delay in instituting the present action caused him prejudice, this issue is without merit.

▐▮▮▮▮ Finally, we address whether Appellant's convictions for four misdemeanors of the first degree and one misdemeanor of the second degree are "infamous crimes" for purposes of

10. Appellant also argues that the criminal sentencing proceeding was the only forum in which he could have been removed from office. This argument is patently flawed. Contrary to Appellant's assertion, the prohibition against those convicted of infamous crimes from holding public office is a Constitutional mandate that can never be altered by a sentencing plea bargain agreement. It is not within a trial judge's authority to reshape or ignore the Constitution when fashioning a sentence. Likewise, the district attorney does not have the power to enter into a plea agreement that specifically reserves the defendant's right to hold public office in spite of his conviction for an infamous crime. Thus, the fact that removal from office was not included in the terms of Appellant's plea bargain pertaining to the underlying crimes is irrelevant.

Article II, Section 7 of the Pennsylvania Constitution.[11] Appellant argues that because his crimes were not felonies and were not in the nature of *crimen falsi*, they are not infamous crimes. He argues that the common pleas court improperly focused solely upon the definition of infamous crime as one which rendered a person incapable of serving as a juror and failed to take into account the historical meaning of that term.

In the seminal case of *Commonwealth v. Shaver*, 3 Watts & Serg. 338 (1842), our Court quoted Webster's Dictionary as defining "infamy" as "that loss of character, or public disgrace which a convict incurs, and by which he is rendered incapable of being a witness or juror." *Id.* at 342 (emphasis deleted). The Court proceeded, however, to explain in great detail what types of offenses rendered one incompetent to be a witness and were therefore "infamous." We stated:

> The offences which disqualify a person to give evidence, when convicted of the same, are treason, felony, and every species of the *crimen falsi*—such as forgery, subornation of perjury, attaint of false verdict, and other offences of the like description, which involve the charge of *falsehood, and affect the public administration of justice.*

*Id.* (emphasis supplied).

Our Court has consistently applied this definition without employing a mechanical rule whereby we deem a crime infamous solely on the grounds that it disqualifies one from serving as a juror.[12] Instead, we have analyzed the facts and

11. In order to successfully maintain this action in *quo warranto,* the Commonwealth must establish the following three elements: (1) that the person to be ousted has been convicted of a crime; (2) that the crime committed constitutes an infamous crime; and (3) that the person holds a public office. Pa. Const. art. II, § 7. Appellant admits that he has been convicted of the aforementioned crimes and that he held a public office. Accordingly, only the definition of infamous crime is at issue.

12. Such a literal interpretation is unworkable as the requisites for serving as a juror are not of constitutional mandate, but are rather subject to the command of the legislature. *See* 42 Pa.C.S. § 4502(3) (citizen may not serve as a juror if he has been convicted of a crime punishable by imprisonment for more than one year). Moreover, the standard for competency to serve as a witness has also changed

498

circumstances surrounding the crime and determined whether the offense at issue was akin to those set forth in *Shaver*.

In the case of *In re Greenberg*, 442 Pa. 411, 280 A.2d 370 (1971), a common pleas court judge was convicted of conspiracy to use the United States mail to perpetrate a fraud to "kite" bank checks.[13]  The issue was whether such conviction constituted an infamous crime as set forth in Article V, Section 18 of the Pennsylvania Constitution, concerning the removal of public officers "on conviction of misbehavior in office or of any infamous crime."  In resolving the issue, our Court examined the nature of the crime and concluded that the federal crime of using the mails to defraud fell within the ambit of the above-quoted *Shaver* classification.  The Court did not even mention, let alone rely on whether the fraud conviction rendered the judge incompetent to serve as a juror.

We employed a similar analysis in *In re Petition of Hughes*, 516 Pa. 90, 532 A.2d 298 (1987).  There, a city councilman accepted $10,000 in exchange for promising to vote for a particular hotel project.  He was convicted in federal court of conspiracy to obstruct interstate commerce in violation of the Hobbs Act, 18 U.S.C. § 1951(a), in connection with the incident.  In determining whether such offense constituted an infamous crime pursuant to Article II, Section 7, we again cited with approval the *Shaver* description of infamous crime.

Our Court then examined the nature and circumstances of the offense committed and concluded that the elements of the offense were akin to those constituting bribery, an offense

throughout history.  In 1842 when *Shaver* was decided, the conviction of a felony would disqualify one from serving as a witness.  Our Court later recognized that the Act of 1887 removed the disqualification imposed by common law and thereafter all persons except those convicted of perjury were competent as witnesses.  *Commonwealth v. Clemmer*, 190 Pa. 202, 209, 42 A. 675 (1899).  The legislature codified the disqualification of a witness by perjury conviction at 42 Pa.C.S. § 5922.  A similar disqualification in criminal proceedings was eliminated in 1993.  42 Pa.C.S. § 5912.  It is unlikely that the framers of the Constitution intended "infamous crime," a term of constitutional import, to be subject to such varying interpretations.

13.  The crime was defined in 18 U.S.C. § 1341, which provides for a maximum penalty of a $1,000 fine or 5 years imprisonment or both.

specifically enumerated in Article II, Section 7. We noted that a councilman's conviction for "selling his vote" clearly involved a falsehood that affected the administration of justice. *Shaver* at 342. Accordingly, we held that the councilman was precluded from seeking reelection to public office. No emphasis was placed on the fact that the conviction rendered the defendant incapable of serving as a juror.

Accordingly, we find that it is the *Shaver* classification referring to infamous crimes as felonies and *crimen falsi* offenses and not the juror disqualification language, which has been followed for over one hundred fifty years in this Commonwealth. As we see no reason to depart from such an established principle, we reaffirm that a crime is infamous for purposes of Article II, Section 7, if its underlying facts establish a felony, a *crimen falsi* offense, or a like offense involving the charge of falsehood that affects the public administration of justice.[11]

We reach this conclusion acknowledging that the makers of the Constitution intended that the law in force at the time should determine whether the crime was infamous. *Shaver*, 3 Watts & Serg. at 341. In a similar vein, we have held that the definition espoused in *Shaver* was "not sufficiently inclusive for the modern era," *Petition of Hughes*, 516 Pa. 90, 532 A.2d 298, 302 (1987), quoting *In re Greenberg*, 442 Pa. 411, 280 A.2d 370, 373 (1971). This does not mean, however, that the scope of "infamous crime" depends on the accepted societal mores of the day. Rather, it means that crimes akin to those enumerated in *Shaver*, that may not have existed at the time the Constitution was framed, may qualify as "infamous crimes" today.[15]

14. Article II, Section 7 also expressly provides that one is precluded from holding public office if he is convicted of embezzlement of public moneys, bribery, or perjury.

15. For example, the conviction at issue in *In re Petition of Hughes*, a violation of the Hobbs Act, did not exist at the time the Constitution was framed, but was held to be an infamous crime because the elements of the offense were akin to bribery.

We must next apply this standard to the facts of the instant case. As noted, Appellant's convictions arose from his holding his former girlfriend at gunpoint for three hours in a parked car. None of Appellant's various convictions involve a felony, *see* note 6, a *crimen falsi* offense, or a like offense involving the charge of falsehood that affects the public administration of justice. Although Appellant's offenses are reprehensible, they are not of such nature as to be a constitutional impediment to his holding office. It is the electorate who must determine whether Appellant's offenses make him undeserving of holding an office of public trust.

Because the offenses committed by Appellant do not constitute infamous crimes, their commission does not preclude Appellant from holding from public office. Accordingly, the order of the common pleas court is reversed.

Justice CASTILLE files a Concurring and Dissenting Opinion in which Justice NIGRO and Justice NEWMAN join.

CASTILLE, Justice, concurring and dissenting.

I agree with the Majority that the trial court had jurisdiction over this action and that the doctrine of laches did not bar the action and, therefore, I join that part of the majority opinion. However, I must respectfully dissent from the Majority's conclusion that appellant's convictions do not constitute "infamous crimes" for purposes of Article II, Section 7 of the Pennsylvania Constitution.

Although the term "infamous crime" as contained in Article II, Section 7 is not defined, this Court held in 1842 that an "infamous crime" was one that rendered a convicted person incapable of serving as a witness. *Commonwealth v. Shaver,* 3 Watts & Serg. 338, 342 (1842).[1] In *Shaver,* this Court noted

1. The Court noted that both Webster's Dictionary and Tomlin's Law Dictionary then defined an infamous crime as one that would disqualify a person from serving as a witness *or a juror.* However, the *Shaver* Court proceeded to base its analysis exclusively on those crimes that would disqualify a person from serving as a witness. *Id.* Currently, a person is disqualified from serving as a juror if he or she has been

that at common law the offenses that disqualified a person from giving evidence were "treason, felony, and every species of *crimen falsi* – such as forgery, perjury, subordination of perjury, attaint of false verdict, and other offenses of like description which involve the charge of falsehood, and affected the public administration of justice." *Id.* The Majority is correct that the few cases decided by this Court since *Shaver* concerning the definition of "infamous crime" have involved crimes in the nature of *crimen falsi* that might affect the administration of justice. *See, e.g., Petition of Hughes, supra* at 95, 532 A.2d at 301 (holding that a candidate who was convicted in federal court of conspiracy to obstruct interstate commerce in violation of the federal Hobbs Act [2] was prohibited from holding public office by the "infamous crimes" provision of Article II, Section 7 because the crime was similar to bribery, and bribery was encompassed in the phrase "other infamous crimes"); *In re Greenberg,* 442 Pa. 411, 416, 280 A.2d 370, 372 (1971) (suspending a Court of Common Pleas judge from office following his conviction for conspiracy to use the United States mail to perpetrate fraud by kiting bank checks); *see also Commonwealth ex. rel. Corbett v. Desiderio,* 698 A.2d 134, 138–39 (Pa.Cmwlth.1997) (conviction of accepting money in exchange for official favors in violation of conflict of interest provision of State Ethics Act was "infamous" for purposes of Article II, Section 7).

However, the *Shaver* Court recognized that the founders of the Constitution intended "that the law in force for the time being should determine whether a particular crime was infamous or not," thereby implying that the definition of "infamous crime" was subject to change. *Shaver, supra* at 341. Moreover, this Court has suggested that *Shaver* is not all-inclusive as to what offenses constitute "infamous crimes." In both *Greenberg* and *Petition of Hughes,* this Court cited the *Shaver* definition of "infamous crime" but noted that it was doing so "without suggesting that this definition is sufficiently

convicted of a crime punishable by imprisonment for more than one year. 42 Pa.C.S. § 4502(3).

**2.** 18 U.S.C. § 1951(a).

502

inclusive for the modern era." *Greenberg, supra.* at 417, 280 A.2d at 372; *Petition of Hughes, supra* at 97, 532 A.2d at 302. Thus, it would appear that the constitutional concept of infamous crimes is not as inflexible as the Majority would have it. *See* Op. at 652 n. 12. Indeed, in *Petition of Hughes,* a majority of this Court expressly stated that the Court was not limiting disqualification under Article II, Section 7 to the common law grounds. *Id.* at 99–100, 532 A.2d at 303 (Hutchinson, J., joined by four justices, concurring). Further, by declaring certain officials ineligible to hold office based on their violations of the Hobbs Act and the federal crime of mail fraud, this Court demonstrated that it did not intend to restrict the definition of "infamous crime" to those offenses specifically enumerated in *Shaver.*[3]

Other than those crimes specifically enumerated in Article II, Section 7, the determination of what constitutes an infamous crime must be based upon the nature of the offense. The fact that this case presents the first opportunity for this Court to determine whether crimes not in the nature of *crimen falsi* may qualify as infamous crimes is insufficient reason in itself to reject the claim outright. I believe that the particular crimes for which appellant was convicted demonstrate that he lacks the high moral character that the citizens of this Commonwealth have a right to expect from their public officials. *See Petition of Hughes, supra* at 99, 532 A.2d at 302 (citing with approval Delaware Supreme Court holding that similar provision of Delaware Constitution "is essentially a character provision, mandating that all candidates for State office possess high moral qualities."). Appellant's gunpoint assault on his former girlfriend and the concurrent significant

3. Despite the Majority's stated rationale that the definition of "infamous crime" should not be subject to varying interpretations, the Majority nonetheless continues to approve of a rule that includes felonies within the ambit of infamous crimes. However, the legislature can, and frequently does, alter the complement of crimes that constitute felonies. The legislature may change felonies to misdemeanors and vice versa or, indeed, criminalize acts as felonies that were not previously criminal at all. Thus, even under the Majority's reasoning, the crimes that qualify as infamous will continue to change. I think it far better to focus on the nature of the conduct than the legislatively-determined grading of the crime.

restraint of her personal freedom was a violent intentional act that manifested appellant's disregard for the personal safety of another citizen. The public trust requires that our elected officials be above such crimes of violence.[4]

For the foregoing reasons, I believe that appellant has been convicted of infamous crimes for purposes of Article II, Section 7 and is, therefore, ineligible to hold public office. Accordingly, I dissent and would affirm the order of the Court of Common Pleas.

Justice NIGRO and Justice NEWMAN join this concurring and dissenting opinion.

---

4. In determining whether a given crime violates the public trust, the courts must consider the nature of the crime and the passage of time since the crime was committed. Felonies violate the public trust by their very nature and are thus always infamous crimes.

Under some circumstances, certian misdemeanor convictions may not undermine the public trust and, therefore, would not consitute infamous crimes. This is not such an instance, however.