The CITY OF PHILADELPHIA
and John F. Street

v.

The SOUTHEASTERN PENNSYL-VANIA TRANSPORTATION AU-THORITY (SEPTA), Appellant.

Commonwealth Court of Pennsylvania.

Argued Oct. 31, 2007.

Decided Dec. 14, 2007.

Thomas S. Biemer, Mariana Rossman, and Scott P. Shectman, Philadelphia, for appellant.

Mark R. Zecca, Philadelphia, for appellees.

BEFORE: LEADBETTER, President Judge, COLINS, Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge SMITH–RIBNER.

The Southeastern Pennsylvania Transportation Authority (SEPTA) appeals from an order of the Court of Common Pleas of Philadelphia County of August 16, 2007 that vacated the decision of SEPTA's Board of Directors (Board) of June 28, 2007 to eliminate paper transfers as part of its approval of a particular proposal for fare changes and schedule reductions known as "Hybrid Plan A." The two stated issues include whether the trial court erred by concluding that SEPTA's Board acted capriciously and therefore manifestly abused its discretion in deciding to implement a comprehensive fare plan that elimi-

nated paper transfers as part of SEPTA's Fiscal Year 2008 (FY 2008) Operating Budget and whether the trial court erred by failing to dismiss the appeal by the City of Philadelphia (City) where the record shows that the Board did not manifestly and flagrantly abuse its discretion in setting rates and fares. The City and Mayor John F. Street (Mayor Street) have filed a motion to dismiss for mootness, argued along with the merits of the case.

I

On March 12, 2007, SEPTA published a notice of public hearing that contained three plans for fare changes and schedule reductions that SEPTA was considering in conjunction with its proposed operating budget for FY 2008. The Board was presented with three proposals at a public meeting on May 24, 2007: "Plan A—Standard Proposal," "Plan A—Simplified Proposal" and a new "Hybrid Plan A." Hybrid Plan A included the elimination of paper transfers, which at the time were sold for $0.60. The Board, with the exception of the two City members, voted to approve Hybrid Plan A. At its next meeting on June 28, 2007, the Board members overrode the veto of the City members and approved Hybrid Plan A to take effect at midnight on July 31, 2007.

On July 30, 2007, the City and Mayor Street (together, City) filed in the trial court an appeal from the Board's decision, a verified complaint and an emergency motion for temporary restraining order, preliminary injunction and supersedeas. The trial court heard testimony and argument on July 31, 2007 and then issued an order granting the motion and temporarily enjoining SEPTA from eliminating transfers pending the court's review and also issued a rule to show cause why the temporary restraining order should not be made permanent and a preliminary injunction issue, returnable August 6, 2007. It heard testimony on the rule on that date and issued an opinion and order on August 16, 2007.[1] It quoted the principle enunci-

---

1. The trial court's opinion stated that Christopher Zearfoss, Senior Transportation Manager for the City's Office of Strategic Planning, testified that City riders constituted 80 percent of the total ridership of the entire SEPTA system but only 30 percent of the Regional Rail System on which transfers are not used, that on average there are 594,000 riders on the City Transit Division daily and that approximately 19 percent of those use transfers. He testified that riders who use transfers would experience transportation cost increases of between 37 percent and 87 percent depending on the number of vehicle changes but that suburban riders would experience a 27.2 percent decrease. Dianne Reed, Budget Director and Deputy Finance Director, testified about the results of two studies conducted at her direction to establish the impact of SEPTA's services upon certain racial and income groups. They established that 80 percent of SEPTA riders are City residents, 85.2 percent fall within the "low-income" category, and a substantial portion of those are African–American. Additional evidence showed that approximately 32,000 school students would experience transportation cost increases between 100 and 200 percent. The court noted in a footnote that SEPTA had informed it of an accommodation with the School District, but the court pointed out that it was as an afterthought after adoption of the new fares.

John McGee, SEPTA's Chief Officer of Revenue, Ridership, Marketing and Sales, testified at the July 31 hearing that paper transfers are used by fewer passengers as time goes on and that there are extraordinary issues related to control of the transfers, which have no electronic identity and are the weakest link in the fare collection system. He stated that the Pennsylvania House of Representatives had conducted a study and advised SEPTA to proceed posthaste with modernization of fare collection. When asked if his study had evaluated what kind of riders would be affected by the elimination of transfers, he stated that their evaluation had to do with the frequency of rides. He admitted that SEPTA had the ability to design an across-the-board fare increase that would have affected all categories of ridership equally.

ated in *Blumenschein v. Housing Authority of Pittsburgh,* 379 Pa. 566, 109 A.2d 331 (1954), that courts will not review actions of governmental bodies or administrative tribunals that involve acts of discretion in the absence of bad faith, fraud, capricious action or abuse of power.

In its discussion, the trial court stated that the evidence demonstrated that SEPTA's Board voted to eliminate paper transfers to mollify the legislature in hopes of ensuring funding, without any study of the impact on those who would be most adversely affected, without any semblance of a "modernization plan" ready and with no agreement with the Philadelphia School District in place, when they could have designed a plan with an equitable impact on all riders. In view of the real potential for harm to those who most heavily rely upon SEPTA, the trial court concluded that the decision was "capricious" and was a manifest and flagrant abuse of the Board's discretion. It granted the City's motion and vacated the Board's decision to eliminate paper transfers. In addition, the temporary injunction entered July 31 was made permanent during pendency of the underlying action. SEPTA appealed to this Court on August 20, 2007.

The SEPTA Board met on September 27, 2007, while the present appeal was pending. The Board voted on and approved a new resolution that superseded

Hybrid Plan A and made several changes, including raising the price of tokens from $1.30 to $1.45 and raising the price of transfers from $0.60 to $0.75 as of October 1, 2007 (September 27 Resolution). After discussing the possibility of a favorable court decision, the Board adopted the following:

> FURTHER RESOLVED, that in the event a court of competent jurisdiction issues a final order that would allow SEPTA to eliminate the use of paper transfers as fare instruments SEPTA will (i) retain the increases allowed under this Resolution and (ii) delay the elimination of the use of paper transfers as fare instruments until the Board considers at a regular meeting or special meeting whether to retain the increases and/or eliminate transfers.

September 27 Resolution at 4–5; *see* September 27, 2007 Notes of Testimony (N.T.) 44–45. In view of the September 27 Resolution the City filed a motion to dismiss the appeal for mootness pursuant to Pa. R.A.P.1972(4).[2] On October 22, 2007, SEPTA filed an answer and a memorandum in support.

### II

Before the Court may consider the merits of this dispute, it must decide the City's motion to dismiss the appeal for mootness.[3] In *Public Defender's Office of Ven-*

---

**2.** The motion included a transcript of the Board meeting along with a copy of the September 27 Resolution and the praecipe that the City filed to discontinue the statutory appeal and the civil action filed in the trial court, verified by a declaration of J. Barry Davis, the Chief Deputy of Regulatory Affairs of the City Law Department. *See* Pa. R.A.P. 123(c) (providing for verified speaking applications). Subsequent to argument, SEPTA filed an application under Pa. R.A.P. 123 and 2501 for leave of Court to file documents erroneously excluded from the Certified Record. Rule 2501(a) provides that after argu-

ment no brief, memorandum or letter relating to a case shall be presented or submitted, either directly or indirectly, except upon application or when expressly allowed at the time of argument. The Court grants the application.

**3.** On the merits of the dispute, SEPTA first contends that the trial court improperly substituted judicial discretion for administrative discretion of the SEPTA Board and reversed the Board's final decision in the absence of error of law or manifest and flagrant abuse of discretion. Second, SEPTA maintains that

*ango County v. Venango County Court of Common Pleas,* 586 Pa. 317, 893 A.2d 1275 (2006), the Supreme Court addressed mootness, stating:

The cases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten under way—changes in the facts or in the law—which allegedly deprive the litigant of the necessary stake in the outcome. The mootness doctrine requires that an actual case or controversy must be extant at all stages of review, not merely at the time the complaint is filed.

*Id.,* 586 Pa. at 325, 893 A.2d at 1279 (quoting *Pap's A.M. v. City of Erie,* 571 Pa. 375, 389, 812 A.2d 591, 599–600 (2002)). In

*Mistich v. Pennsylvania Board of Probation and Parole,* 863 A.2d 116 (Pa.Cmwlth. 2004), this Court explained that the existence of a case or controversy requires a real and not a hypothetical legal controversy and one that affects another in a concrete manner so as to provide a factual predicate for reasoned adjudication, with sufficiently adverse parties to sharpen the issues for judicial resolution.

The City submits first that the trial court's August 2007 order constituted preliminary relief, which automatically terminated when the City discontinued its entire civil action in the trial court. Assuming *arguendo* that the trial court's order was final, the City argues that SEPTA mooted this case when it adopted the September 27 Resolution, which superseded the very action, namely elimination of paper trans-

---

the trial court erred in determining that SEPTA acted capriciously in eliminating transfers, referring to definitions of "capricious" as characterized by whim, impulsive, lacking a rational basis and likely to change suddenly. It refers to its development of alternative fare proposals and consideration of the concerns of the state legislature and the effect of state subsidies and its reliance on its studies and evaluations as indications that its decision was not capricious. Finally, SEPTA asserts that no evidence exists to support the claim that its Board committed a manifest and flagrant abuse of discretion or error of law. It asserts that the public had adequate notice and opportunity to comment on Hybrid Plan A, that the Citizen Advisory Committee had notice and opportunity to comment, that there was no confusion reflected in the Board's minutes when it was adopted and that there was no improper delegation of powers at the June 28, 2007 meeting. Further, Hybrid Plan A does not violate principles of equal protection, federal regulations and administrative guidance provide no basis for reversing the Board's decision and its statutory grant of authority to set fares, rates and service, subject to a specified procedure for public hearings, is not an unconstitutional delegation of power.

The City argues that the trial court issued a preliminary injunction on August 16, 2007

because the only matter before the court at that time was the City's emergency motion. Also, it met the elements required to be shown for a preliminary injunction. *See Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.,* 573 Pa. 637, 828 A.2d 995 (2003). The City asserts that it demonstrated irreparable harm that cannot adequately be compensated by money damages by showing severe economic hardship to thousands of low-income residents, and it established a likelihood of success on the merits of its contention that the Board exceeded the bounds of its discretion in eliminating paper transfers in this case. The City argued, *inter alia,* that a trial court has the power to reverse an unreasonable rate set by SEPTA, that elimination of transfers is an unreasonable rate, that the court properly could take notice of SEPTA's behavior toward school children and the School District of Philadelphia and of SEPTA's lack of knowledge of federal requirements to analyze impacts on minority and low-income riders and that SEPTA withheld requested information and failed to provide adequate notice. Moreover, the City showed that greater harm would result from denying the motion than by granting it and that the public interest would not be adversely affected.

fers, that SEPTA purports to be defending on appeal. Any order by this Court upholding Hybrid Plan A's elimination of transfers would be advisory, because that plan as adopted on June 28, 2007 no longer exists. Therefore, SEPTA is no longer aggrieved by the trial court's order, and it would reap no concrete benefit from an order of this Court reversing the trial court. As the City contends in its motion and restated at argument, a live controversy will re-materialize if SEPTA again votes to eliminate transfers. Such controversy would exist, however, under a different set of facts, including a new fare structure and SEPTA's experience under it and the effect of subsequent increased state funding.

SEPTA's position is that the trial court's August 2007 order did not grant only preliminary relief in that by its own terms it "granted" the statutory appeal filed by the City and "vacated" the Board's decision to eliminate transfers. Further, the September 27 Resolution permits the Board to eliminate transfers without reinstituting the process of public notice and public hearings required by statute. In its memorandum, SEPTA initially agrees that cases cited by the City do involve mootness due to intervening changes, such as *Taylor v. Pennsylvania Board of Probation and Parole*, 746 A.2d 671 (Pa.Cmwlth. 2000). In this case, however, SEPTA maintains that it already has lost millions of dollars by being prevented from elimi-

nating transfers and that the trial court's order still affects its ability to take actions to simplify its fare system. SEPTA disputes the assertion that it now has no intention to eliminate transfers, noting that the September 27 Resolution expressly authorizes the Board to do so after a vote and that the Board rejected a proposed resolution that would have required SEPTA to continue transfers in effect until it upgraded its fare collection system. *See* N.T. 33–35. SEPTA suggests that *Pap's A.M.* supports SEPTA's position that a "reasonable expectation" exists that its Board will move to eliminate transfers, which the City will again challenge, and that the case therefore is not moot.[4]

Second, SEPTA contends that the City is attempting to "manufacture mootness" to evade appellate review. In *Pap's A.M.* the Pennsylvania Supreme Court prevented parties from arguing mootness because they were attempting to manipulate jurisdiction to insulate a favorable ruling. The trial court would lack authority to proceed further in this matter as to which an appeal has been taken. *See* Pa. R.A.P. 1701(a). Finally, SEPTA directly argues the applicability of two recognized exceptions to the mootness doctrine, namely, that the matter involves issues of great importance to the public interest and that the conduct complained of is capable of repetition yet likely to evade review. *Musheno v. Department of Public Welfare*, 829 A.2d 1228 (Pa.Cmwlth.2003).[5] SEP-

---

4. In *Pap's A.M.* the operator of an adult entertainment establishment challenged the constitutionality of a city ordinance prohibiting nudity in public places, and the Pennsylvania Supreme Court and the United States Supreme Court refused to dismiss the case for mootness, even though the plaintiff was no longer operating an establishment in the city, because it was still incorporated in Pennsylvania and there was a reasonable expectation that the same controversy could occur if it decided to open a similar establishment.

5. SEPTA cites this Court's decision in *County Council of Erie v. County Executive of Erie*, 143 Pa.Cmwlth. 571, 600 A.2d 257 (1991), where the Court referred to *Southeastern Pennsylvania Transportation Authority v. Weiner*, 56 Pa.Cmwlth. 104, 426 A.2d 191 (1981), as a rare example of the Court's invoking the great public importance exception. In *Weiner* an initial resolution raising rail and transit fares was stayed by the trial court, and this Court affirmed on appeal. The SEPTA Board again raised the fares at its next

TA's view is that the decision to eliminate transfers as part of a comprehensive fare increase is of great public importance and that this situation is likely to recur yet evade appellate review. At argument it stated that it was forced to take measures to raise revenue after the trial court vacated the elimination of transfers.

III

The Court concludes that the present controversy is moot under *Public Defender's Office.* The question in this case is not whether in the abstract SEPTA may eliminate paper transfers but rather whether the trial court erred in concluding that SEPTA abused its discretion in eliminating transfers in this particular case, with this particular factual context and procedural history. If SEPTA should again vote to eliminate transfers and the City should challenge the action, the challenge would arise under a different set of facts, including the new fare structure and its effects as well as the effect of an increase in state funding. Therefore, an order from this Court would be advisory, relating to some past event that will not recur because underlying financial, operational and procedural facts will be different. *See Pittsburgh Palisades Park, LLC v. Commonwealth,* 585 Pa. 196, 888 A.2d 655 (2005) (holding that courts do not render decisions in the abstract or render purely advisory opinions because judicial intervention is appropriate only if underlying controversy is real and concrete).

Next, the Court agrees that the effect of the September 27 Resolution is to render the present controversy moot. As the transcript indicates, the Board's General Counsel, Nicholas J. Staffieri, explained that under one proposal a ruling by this

Court in SEPTA's favor would result in automatically rescinding the fare increases of October 15, 2007 and the continuation of the use of transfers under the trial court's order; that is, SEPTA's original decision would be given full effect. *See* N.T. 36. SEPTA, however, expressly rejected that proposal and instead adopted a proposal maintaining the fare increases approved October 15, 2007 and specifically maintaining paper transfers, with the Board being required to have further discussion and another vote in order to eliminate transfers. It is correct that if SEPTA had adopted the first proposal, this case would not be moot: the effect of the Court's ruling in SEPTA's favor would be to reinstitute SEPTA's original decision. That, however, is not the case in view of the September 27 Resolution. SEPTA superseded the adoption of its original June 28, 2007 plan, and an order from this Court would not have the effect of reinstituting elimination of transfers.

SEPTA may choose to maintain the use of paper transfers indefinitely, which is a matter for its Board to determine during future meetings. Under these circumstances, the actual controversy that gave rise to this case, *i.e.,* whether SEPTA abused its discretion in adopting the elimination of paper transfers under Hybrid Plan A, has ceased to exist. Any remaining controversy is hypothetical rather than actual, *see Pittsburgh Palisades Park; Mistich,* and for that reason the Court must dismiss SEPTA's appeal because it is moot.

***ORDER***

AND NOW, this 14th day of December, 2007, the Court dismisses the appeal filed

meeting and they took effect, and this Court granted an application for reargument on the technically moot appeal because of the great public importance of the matter, which should be decided to avoid future controversy.

by The Southeastern Pennsylvania Transportation Authority (SEPTA) as it is moot. The application of SEPTA for leave of Court to file documents erroneously excluded from the Certified Record is hereby granted.

DISSENTING OPINION BY Judge COLINS.

I must dissent from the well-prepared opinion of the majority.

The record clearly reflects that this controversy is likely to repeat itself, i.e., the adoption of SEPTA's fiscal year 2009 budget.

Therefore, since this matter involves important public policy issues, this Court should resolve the case on the merits. *See Colonial Gardens Nursing Home, Inc. v. Bachman,* 473 Pa. 56, 373 A.2d 748 (1977); *In re Petition of Hughes,* 516 Pa. 90, 532 A.2d 298 (1987) (After a public official had left office, the Court nevertheless considered whether he was ineligible to hold that office as a result of a conviction that might constitute an infamous crime); *Com. ex rel Baldwin v. Richard,* 561 Pa. 489, 493, 751 A.2d 647, 649 (2000) (Court noting that the "issue of what constitutes an infamous crime for the purpose of eligibility to hold public office is a substantial question subject to repetition...."); *Reichley by Wall v. North Penn School District,* 533 Pa. 519, 626 A.2d 123, (1993) (Where the Court considered an appeal involving a teachers' strike, and concluded that, although relief had already been granted such that would render disposition of the appeal moot, the Court would proceed to consider the appeal in order to address a constitutional question that otherwise might never be decided.)

On the merits of the dispute, I agree with SEPTA that the trial court improperly substituted judicial discretion for administration discretion of the SEPTA Board. There being no error of law or manifest and flagrant abuse of discretion, the trial court should be reversed, and the SEPTA Board's proposal to eliminate paper transfers should be reinstated.