**In re: Application of the HUMANE SOCIETY OF the HARRISBURG AREA, INC. for Appointment of Humane Society Police Officer.**

**Appeal of: Eric Winter.**

Commonwealth Court of Pennsylvania.

Argued March 10, 2014.
Decided June 5, 2014.

Eric E. Winter, Bechtelsville, pro se.

Michael J. Crocenzi and Kathryn E. Peters, Harrisburg, for appellees William Sandstrom and Harrisburg Area Humane Society.

BEFORE: LEADBETTER, Judge, and LEAVITT, Judge, and McCULLOUGH, Judge.

OPINION BY Judge LEADBETTER.

Eric Winter, Esquire appeals from the order of the Court of Common Pleas of Dauphin County denying his petition to revoke the court's 2004 appointment of William E. Sandstrom to act as a humane society police officer for the Humane Society of the Harrisburg Area, Inc. (Humane Society).[1] Attorney Winter asked the court to declare the appointment void ab initio and official action taken by Sandstrom invalid.

Attorney Winter argues that Sandstrom was ineligible to be appointed as a humane society police officer due to his 1999 conviction of driving under the influence (DUI) (1) under Section 3705(4) of the Act, commonly known as the Humane Society Police Officer Enforcement Act, 22 Pa.C.S. § 3705(4), enacted to be effective one year after his 2004 appointment, which disqualifies an individual who has been convicted of "a serious misdemeanor," and (2) under Article VI, Section 7 of the Pennsylvania Constitution, Pa. CONST. art. 6, § 7, which requires removal of civil officers upon conviction of misbehavior in office or

1. A "humane society police officer" is "[a]ny person who holds a current appointment under this chapter [Chapter 37 of the Act, commonly known as the Humane Society Police Officer Enforcement Act, 22 Pa.C.S. §§ 3701–3718], to act as a humane society police officer for a society or association for the prevention of cruelty to animals." Section 3702 of the Humane Society Police Officer Enforce-

ment Act, 22 Pa.C.S. § 3702. A humane society police officer has "power and authority to exercise the powers conferred under 18 Pa. C.S. § 5511 (relating to cruelty to animals) in enforcement of animal cruelty laws only within the particular county whose court of common pleas issued the appointment." 22 Pa. C.S. § 3708(a).

of any "infamous crime." We conclude that neither provision applies to Sandstrom's DUI conviction and that the trial court did not abuse its discretion in denying the revocation petition. Accordingly, we affirm.

The Humane Society is a nonprofit corporation established for the purpose of preventing cruelty to animals. In April 2004, the Humane Society filed with the trial court an application seeking to appoint Sandstrom, who had been a humane society police officer for the Humane Society of Northwestern Pennsylvania in Erie County, to serve as its humane society police officer in Dauphin, Perry, Cumberland and York Counties. Pursuant to Section 4(a) of the Humane Society Police Officer Enforcement Act, Act of December 12, 1994, P.L. 956, *as amended*, 3 P.S. § 456.4(a), then in effect, the Humane Society attached to the application all of the required documents, including certificates of Sandstrom's satisfactory completion of training programs and a copy of the Request for Criminal Record Check submitted by Sandstrom in April 2003 and completed by the Pennsylvania State Police in May 2003, indicating that he had "no [criminal] record." Reproduced Record (R.R.) at 10a. In May 2004, the court granted the Humane Society's application and appointed Sandstrom to act as its police officer. He is currently the Humane Society's chief police officer.

On February 7, 2013, Attorney Winter, whose client had received 30 citations issued by Sandstrom, filed a petition to revoke Sandstrom's 2004 appointment and to declare the appointment void ab initio and his previous official actions invalid. Attorney Winter alleged that Sandstrom pleaded guilty to DUI in 1999 in the Court of Common Pleas of Erie County and was sentenced to serve a 2–year intermediate punishment with 60–day house arrest. He claimed that Sandstrom was disqualified to be appointed to serve as a humane society police officer under Section 3705(4) of the current Humane Society Police Officer Enforcement Act that became effective one year after Sandstrom's 2004 appointment.[2] Section 3705(4) provides:

> An individual shall be qualified for an appointment as a humane society police officer provided the society or association submits proof satisfactory to the court of common pleas in each county for which the society or association directs the individual to act as a humane society police officer that the individual meets all of the following requirements:
>
> . . . .
>
> (4) Has not been convicted of an offense graded a felony or *a serious misdemeanor.* [Emphasis added.] [3]

A "serious misdemeanor" is defined as "[a] criminal offense for which more than one year in prison can be imposed as a punishment." Section 3702 of the current Humane Society Police Officer Enforcement Act, 22 Pa.C.S. § 3702. It is undisputed that in 1999, DUI was graded as a misdemeanor of the second degree punishable by no more than two years in prison and falls within the definition of a serious misdemeanor. The former Humane Soci-

---

**2.** The former Humane Society Police Officer Enforcement Act, 3 P.S. §§ 456.1–456.7, was repealed by Section 3 of the Act of November 30, 2004, P.L. 1603, effective May 31, 2005, and replaced by the current Humane Society Police Officer Enforcement Act.

**3.** An applicant is also required to establish that he or she has been a resident of the Commonwealth, has successfully completed the training program, has obtained a criminal history report from the Pennsylvania State Police, has not been convicted of any violation of Section 5511 of the Crimes Code, *as amended*, 18 Pa.C.S. § 5511 (cruelty to animals), and has not been convicted of a similar offense in another jurisdiction. Section 3705(1), (2), (3), (5) and (6).

ety Police Officer Enforcement Act in effect at the time of Sandstrom's appointment, however, did not contain a similar provision disqualifying an applicant for a conviction of a serious misdemeanor.

Attorney Winter sought to revoke Sandstrom's appointment pursuant to Section 3706(a)(1) and (3) of the current Humane Society Police Officer Enforcement Act, 22 Pa.C.S. § 3706(a)(1) and (3), which provides:

(a) **Grounds for suspension, revocation, limitation or restriction.**—By its own action or pursuant to a written affidavit filed by a complainant, the court of common pleas *may,* after conducting a hearing, suspend, revoke, limit or restrict an appointment of an individual to act as a humane society police officer in the county if the court determines any of the following:

(1) Being convicted of a felony or *a serious misdemeanor* in any Federal or State court or being convicted of the equivalent of a felony in any foreign country, territory or possession.

. . . .

(3) Presenting false credentials or documents or making a false or misleading statement in the application for appointment ... or submitting an application for appointment ... containing a false or misleading statement. [Emphasis added.]

At a hearing held on the revocation petition, Sandstrom testified that he applied for a position with the Humane Society because he planned to marry and relocate to Dauphin County. While admitting that he pleaded guilty to the DUI charge in 1999, he testified that he told the Humane Society's former executive director about his DUI conviction; that he assumed that only a felony conviction would appear on the criminal record check; that the Humane Society's solicitor prepared the appointment application and attached to the

application a copy of the Request for Criminal Record Check completed by the Pennsylvania State Police; and, that he never intended to mislead the court about his qualifications to become a humane society police officer.

The Humane Society also presented the testimony of Douglas Howell, Pennsylvania State Police Trooper; Karen Sheriff, an employee of the Department of Aging; and Nicole Boyer, the humane society police officer for the York County SPCA (Society for the Prevention of Cruelty to Animals). They testified that Sandstrom was very knowledgeable in animal laws and did excellent work. Amy Kaunas, the Humane Society's current executive director, testified that the former executive director requested two additional criminal background checks on Sandstrom in 2004 and 2005 after the 2004 appointment, which also came back indicating that he had no criminal record. Kaunas further testified that Sandstrom told her about the DUI conviction and that the conviction did not affect his ability to serve as a humane society police officer. Attorney Winter did not present any testimony to support his petition.

The trial court denied Attorney Winter's petition, concluding that 22 Pa.C.S. § 3705(4), disqualifying an applicant for a conviction of a serious misdemeanor, may not be retroactively applied to revoke Sandstrom's 2004 appointment. The court rejected Attorney Winter's claim that Sandstrom intentionally misled the court by having false information included in the application filed by the Humane Society. Accepting Sandstrom's testimony, the court found that he properly applied for and received a criminal background check from the Pennsylvania State Police, which was collected by the Humane Society's solicitor to complete the application, and that Sandstrom did not know why his DUI

conviction was not shown in the criminal background check. The court stated that "if any fault must be attributed in this case, it would seem to most appropriately lie with the PSP." Trial Court's Opinion at 3. Attorney Winter appealed the trial court's decision to the Superior Court which transferred the appeal to this Court.

Attorney Winter argues that Sandstrom's appointment should be revoked because he "ceased to be eligible" to become a humane society police officer as of May 29, 2005, the effective date of Section 3705(4) of the current Humane Society Police Officer Enforcement Act, due to his 1999 DUI conviction. Attorney Winter's Brief at 17. Attorney Winter insists that the current Act contains no "grandfather clause" excusing Sandstrom from complying with the additional qualification criteria set forth therein.[4]

When the trial court appointed Sandstrom in 2004, Section 4(d) of the former Humane Society Police Officer Enforcement Act provided:

> **(d) Criminal history information.—** The application for the appointment of a person to act as a humane society police officer shall include a report of criminal history record information from the Pennsylvania State Police, pursuant to 18 Pa.C.S. Ch. 91 (relating to criminal history record information),[5] or a statement from the Pennsylvania State Police that the Pennsylvania State Police central repository contains no such information relating to the person who is the subject of the application.

Section 5(a)(3) of the former Act, 3 P.S. § 456.5(a)(3), further provided:

> The court of common pleas shall refuse to appoint a person to act as a humane society police officer or shall suspend or revoke the appointment of a person who is acting as a humane society police officer if the court determines that the person has:
>
> . . . .
>
> (3) Had a criminal history record which would disqualify the applicant from becoming a private police officer pursuant to 22 Pa.C.S. Ch. 5 (relating to private police).

Section 5(c) of the former Act, 3 P.S. § 456.5(c), provided that "[n]othing in this section shall be construed to limit the authority of a court of common pleas to deny the appointment of any person or to place upon any person any additional prerequisites or conditions of appointment, pursuant to 22 Pa.C.S. § 501(a) (relating to appointment by nonprofit corporations)."

Chapter 5, referred to in Section 5(a)(3) of the former Act, contains only one section, 22 Pa.C.S. § 501. At the time of the 2004 appointment, Section 501(a) provided that "[a]ny nonprofit corporation . . . organized for the prevention of cruelty to children or aged persons or animals . . . may apply . . . for the appointment of such persons . . . to act as policemen for the corporation." Section 501(b) required appointed police officers of nonprofit corporations to take and subscribe the oath required by Article VI of the Pennsylvania Constitution. Section 501(c) set forth the

---

4. Our review of the trial court's order is limited to determining whether the court committed an error of law or abused its discretion. *Twp. of Lycoming v. Shannon*, 780 A.2d 835, 838 n. 1 (Pa.Cmwlth.2001).

5. The term "criminal history record information" is defined as "[i]nformation collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments, informations or other formal criminal charges and any dispositions arising therefrom." Section 9102 of the Criminal History Record Information Act, *as amended*, 18 Pa.C.S. § 9102.

officers' powers and duties. Neither the former Act nor 22 Pa.C.S. § 501 listed any disqualifying criminal history record.

■ Attorney Winter claims that Section 3705(4) of the current Humane Society Police Officer Enforcement Act, disqualifying an *applicant* from being appointed as a humane society police officer for a conviction of a serious misdemeanor, should apply to revoke Sandstrom's appointment. Section 1926 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1926, provides that "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." Absent such intent, legislation affecting substantive rights is presumed not to be retroactively applicable. *Hodgdon v. Dep't of Transp., Bureau of Driver Licensing,* 19 A.3d 45, 48 (Pa.Cmwlth.2011); *Commonwealth v. Thomas,* 51 A.3d 255, 260 (Pa.Super.2012), *appeal denied,* 619 Pa. 704, 63 A.3d 1247 (2013). Only a statute concerning purely procedural matters applies to litigation pending at the time of its passage. *Morabito's Auto Sales v. Dep't of Transp.,* 552 Pa. 291, 715 A.2d 384, 386 (1998). Indeed, not only does the current statute fail to "clearly and manifestly" mandate retroactivity, a contrary legislative intent is suggested.

Section 3718 of the current Humane Society Police Officer Enforcement Act, 22 Pa.C.S. § 3718, provides:

Any individual appointed prior to the effective date of this chapter as a humane society police officer in the county of the registered office of the society or association for which the individual was previously appointed *shall not be required to apply for appointment by the court of common pleas in that county under this chapter.* Such individual shall be required to apply for appointment pursuant to section 3704 (relating to appointment by nonprofit corporations) in each county other than the initial county of appointment if directed by the society or association. [Emphasis added.]

According to Attorney Winter, Section 3718 is not a "grandfather clause" because it merely exempts the officers appointed under the former Act from reapplying for a position and does not specifically exempt them from complying with the new qualification requirements. He attempts to distinguish Section 3718 from Section 3712(f), 22 Pa.C.S. § 3712(f), which provides that officers appointed prior to the effective date of the new Act "are exempt from the initial training requirements." He also points out that Section 3(1) of the Confidence in Law Enforcement Act, Act of January 29, 2004, P.L. 4, 53 P.S. § 752.3(1), which prohibits employment of an individual who has been convicted of a felony or a serious misdemeanor as a law enforcement officer, specifically provides that it "does not apply to convictions occurring before the effective date of" that Act. *See* Section 8 of the Confidence in Law Enforcement Act set forth in Historical and Statutory Notes to Section 3 .of that Act. He submits that the legislative intent to retroactively apply the more stringent qualification criteria should be inferred from a lack of a similar "grandfather clause" in the "sister" statute of the current Humane Society Police Officer Enforcement Act. Attorney Winter's Brief at 18–19.

■ Contrary to Attorney Winter's assertion, the fact that Section 3718 of the new Humane Society Police Officer Enforcement Act does not include the language specifically exempting them from complying with the new criteria does not indicate the legislative intent to retroactively apply the new Act to officers appointed before its effective date. If the officers appointed under the former Act were required to reapply for appointment,

they would have to comply with the more stringent qualification criteria set forth in Section 3705 of the current Act, including the requirement that an applicant has not been convicted of a felony or a serious misdemeanor. It is axiomatic that all sections of a statute must be construed together in conjunction with each other and with reference to the entire statute. *MC Outdoor, LLC v. Bd. of Comm'rs of Abington Twp.*, 78 A.3d 1269, 1275 (Pa.Cmwlth. 2013), *appeal denied*, 89 A.3d 1286 (Pa. No. 918 MAL 2013, filed April 16, 2014). Sections 3705, 3718 and 3712(f) exempting officers appointed before the effective date of the current Act from the initial training requirements, when read together, reveal a legislative intent not to retroactively apply the additional qualification criteria to previously appointed officers.

Attorney Winter's reliance on the Confidence in Law Enforcement Act is also misplaced. He acknowledges that humane society police officers are not "law enforcement officers" subject to the Confidence in Law Enforcement Act. The current Humane Society Police Officer Enforcement Act and the Confidence in Law Enforcement Act, therefore, are not *in pari materia* relating to the same thing or the same class of people and cannot be read together. 1 Pa.C.S. § 1932; *Buehl v. Horn*, 728 A.2d 973, 980 (Pa.Cmwlth.1999).

■ Attorney Winter next argues that Sandstrom should be disqualified to serve as a humane society police officer under Article VI, Section 7 of the Pennsylvania Constitution, which provides that "[a]ll civil officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on *conviction* of misbehavior in office or *of any infamous crime.*" [Emphasis added.]

Attorney Winter maintains that DUI is an "infamous crime" under Article VI, Section 7, citing *Commonwealth ex rel. Baldwin v. Smolkowicz*, 17 Pa. D. & C.4th 518 (1993), in which the Court of Common Pleas of Berks County concluded that an individual commits an infamous crime when its conviction prohibits him or her from serving as a juror. Attorney Winter asserts that Sandstrom is disqualified from serving as a juror due to his 1999 conviction of DUI which was punishable by imprisonment for more than one year.[6] In so arguing, Attorney Winter totally ignores our Supreme Court's subsequent decisions rejecting the *Smolkowicz* holding.

In the seminal case of *Commonwealth v. Shaver*, 3 Watts & Serg. 338 (Pa.1842), our Supreme Court considered what constituted "an infamous crime" in then Article VI, Section 9 of the Pennsylvania Constitution, Pa. CONST. art. 6, § 9, calling for removal of officers "on conviction of misbehavior in office, or of any infamous crime." The Court looked to the definition of the word "infamy" in the Webster's Dictionary as "loss of character, or public disgrace which a *convict* incurs, and by which he is rendered incapable of being a *witness* or *juror.*" *Id.* at 342 (emphasis in original). The Court stated:

> The offences which disqualify a person to give evidence, when convicted of the same, are treason, felony, and every species of the *crimen falsi*—such as forgery, perjury, subordination of perjury, attaint of false verdict, and other offences of the like description, which involve the charge of *falsehood, and affect the public administration of justice.*

*Id.* (Emphasis in original.)

In *Commonwealth ex rel. Baldwin v. Richard*, 561 Pa. 489, 751 A.2d 647 (2000),

---

**6.** Section 4502(a)(3) of the Judicial Code, *as amended*, 42 Pa.C.S. § 4502(a)(3), provides that any citizen who has been convicted of a crime punishable by imprisonment for more than one year and has not been granted a pardon or amnesty therefor is not qualified to serve as a juror.

the Court considered whether a crime that is neither a felony nor a *crimen falsi* offense can constitute an "infamous crime" under Article II, Section 7 of the Pennsylvania Constitution, Pa. CONST. art. 2, § 7.[7] After review of the cases decided after the *Shaver* decision, the Court stated:

> [W]e find that it is the *Shaver* classification referring to infamous crimes as felonies and *crimen falsi* offenses and not the juror disqualification language, which has been followed for over one hundred fifty years in this Commonwealth. As we see no reason to depart from such an established principle, we reaffirm that a crime is infamous for purposes of Article II, Section 7, if its underlying facts establish *a felony, a crimen falsi offense, or a like offense involving the charge of falsehood that affects the public administration of justice.*

*Id.* at 652–53 (emphasis added). In *Commonwealth ex rel. Corbett v. Griffin,* 596 Pa. 549, 946 A.2d 668 (2008), the Court followed the *Richard* Court's definition of an infamous crime.

The Court's decisions in *Richard* and *Griffin* defining an infamous crime in Article II, Section 7 of the Pennsylvania Constitution equally applies to the same term in Article VI, Section 7. *See Cavanaugh v. Davis,* 497 Pa. 351, 440 A.2d 1380, 1381 (1982) (holding that where, as here, the language in two constitutional provisions relate to the same subject matter, those provisions must be construed together). Under *Richard* and *Griffin,* the eligibility

to serve as a juror is not part of the definition of an infamous crime. DUI is neither a felony nor a *crimen falsi* offense. No evidence was presented to establish that a DUI conviction affects the public administration of justice. Hence, the DUI offense committed by Sandstrom five years before his 2004 appointment is not an infamous crime under Article VI, Section 7.[8]

■ Finally, under Section 3706(a) of the current Humane Society Police Officer Enforcement Act, the court "may" revoke an appointment even when it determines that an officer has been convicted of a serious misdemeanor. Consequently, even if Section 3705(4) of the Current Act disqualifying an individual convicted of a serious misdemeanor were retroactively applicable to Sandstrom, the trial court had discretion to refuse to revoke his appointment.

In *Secretary of Revenue v. John's Vending Corp.,* 453 Pa. 488, 309 A.2d 358 (1973), the appellant corporation's wholesale cigarette dealer's license was revoked based on its failure to list convictions of certain crimes by its president and shareholder in the license application. In reversing this Court's decision affirming the revocation, the Supreme Court stated:

> Where, as here, nearly twenty years has expired since the convictions and the record reveals that the individual has held this position of responsibility for twelve years without any allegation of impropriety, it is ludicrous to contend

---

7. Article 2, Section 7 provides that "[n]o person hereafter convicted of embezzlement of public moneys, bribery, perjury or other *infamous crime,* shall be eligible to the General Assembly, or capable of holding any office of trust or profit in this Commonwealth." (Emphasis added.)

8. Because DUI is not an infamous crime, it is not necessary to decide whether Article VI, Section 7 applies only to infamous crime convicted "while in office." *See Commonwealth v. Rudman,* 56 Pa. D. & C. 393 (1946) (holding that a conviction of an infamous crime is another form of "misbehavior in office" and, therefore, must occur while in office to remove an officer for such crime).

that these prior acts provide any basis to evaluate his present character.

*Id.* at 362.

 Here, Sandstrom was convicted of DUI fourteen years before the filing of the revocation petition. The evidence presented by the Humane Society and accepted by the trial court established that Sandstrom did an excellent job as the Humane Society's police officer during his nine-year employment without any incident of improper conduct and that his conviction did not in any way affect his ability to perform his duties. The Humane Society's current executive director testified that she had "an immense amount of trust in Officer Sandstrom to perform his job duties." Notes of Testimony at 65; R.R. at 86a. The court also found that Sandstrom did not intentionally present misleading information regarding his criminal record. To revoke Sandstrom's appointment despite such evidence would directly run "afoul of the deeply ingrained public policy of this State to avoid unwarranted stigmatization of and unreasonable restrictions upon former offenders" and would "forever foreclose a permissible means of gainful employment because of an improvident act in the distant past." *Warren Cnty. Human Servs. v. State Civil Serv. Comm'n (Roberts)*, 844 A.2d 70, 74 (Pa.Cmwlth.2004). We conclude that the trial court did not

abuse its discretion in denying the revocation petition.[9]

Accordingly, the trial court's order is affirmed.

### ORDER

AND NOW, this 5th day of June, 2014, the order of the Court of Common Pleas of Dauphin County in the above-captioned matter is AFFIRMED.

---

9. Even assuming, *arguendo*, that Sandstrom's appointment could be properly revoked, his revocation would not have invalidated the citations issued by him against Attorney Winter's client. As our Supreme Court stated in *Borough of Pleasant Hills v. Jefferson Twp.*, 359 Pa. 509, 59 A.2d 697, 699 (1948):

A person in possession of an office and discharging its duties under the color of authority—that is, authority derived from an election or appointment however irregular or informal, so that the incumbent be not a mere volunteer—is a de facto officer, and his acts are good so far as respects the public; attacks upon the right of such in-

cumbent to serve must be instituted by the Commonwealth in a direct proceeding for that purpose and cannot be made collaterally.

This *de facto* doctrine "springs from an understandable fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question"; the doctrine "seeks to protect the public by ensuring the orderly functioning of the government despite technical defects in title to office." *State Dental Council & Examining Bd. v. Pollock*, 457 Pa. 264, 318 A.2d 910, 913 (1974).